UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES L. YANCEY,

        Plaintiff,

   v.

DAVID L. BIBB,

        Defendant.

Civil Action 04-00132  (HHK)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles L. Yancey brings this action against defendant David L. Bibb, the Acting Administrator of the U.S. General Services Administration ("GSA"), in his official capacity only,[1] alleging that GSA violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by failing to select him for a vacant position because of his age. Before the court are the parties' cross motions for summary judgment [## 9, 10]. Upon consideration of the motions, the oppositions thereto, and the summary judgment record, the court concludes that both motions must be denied.

**I.  FACTUAL BACKGROUND**

Yancey, who was born on August 26, 1945, began his employment with GSA's Federal Protective Service ("FPS") in December 1967 as a Guard. Five years later, the agency reassigned him to the position of Federal Protective Service Officer ("Officer") at the GS-4 level. During

---

[1]     The plaintiff's complaint originally named then-Administrator of the GSA Stephen Perry as the defendant in this suit. Compl. ¶ 6. David L. Bibb is the current Acting Administrator. Thus, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the court substitutes David L. Bibb for Stephen Perry as the proper defendant.

his tenure as an Officer, Yancey was promoted several times and received many positive performance evaluations. For example, Yancey was promoted from a GS-5 to a GS-6 Officer in January 1989 and was upgraded to the position of a GS-8 Officer in either 1996 or 1997. As a GS-8 Officer, Yancey frequently served as Acting Corporal and, as such, was assigned to familiarize and train new police officers who had recently completed basic training. Yancey's performance as a GS-8 Officer either "exceeded requirements" or was "superior," according to his GSA Employee Reviews from 1999 until 2003.

From 1986 to 2002, Yancey applied at least five times for a promotion to either Corporal or Lead Police Officer, both GS-9 positions, but was never selected. These positions were the most senior non-supervisory police officer positions at GSA. On one such occasion in 1998, when Yancey applied for a Corporal vacancy, GSA selected five individuals other than Yancey. Two of the selectees were in their twenties and did not meet the minimum requirements for the vacant position—that they have fifty-two weeks of experience in the next lower grade. Along with nine other employees who were bypassed for the vacancy, Yancey grieved his non-selection under the collective bargaining agreement ("CBA") between GSA and Yancey's union. The parties ultimately settled the grievance on June 13, 2001, resolving that Yancey and the others were to be given "advanced consideration" for the next six vacant GS-9 Corporal positions and would "automatically be deemed highly qualified and referred to the selecting official without having to undergo the evaluation process." Pl.'s Mot., Exh. 3-A ¶ 4(a).

Two months later, the president of Yancey's local union and signer of the settlement agreement, Carl Yates, wrote to GSA to inquire when the positions covered by the settlement agreement could be expected to be announced. By letter dated November 6, 2001, GSA

responded and stated that FPS had not yet notified Human Resources of "any new Corporal positions," but had suggested that "plans are being made to announce new positions during the 2nd or 3rd quarter of Fiscal Year 2002." *Id.*, Exh. 3-B.

During 2002, the only GS-9 positions announced were those in Vacancy Announcement #02991071. The position advertised, however, was not a Corporal position but was instead listed as "Field Training Officer." *Id.*, Exh. 3-C. The Field Training Officer advertised in 2002 and the Corporal positions for which Yancey had previously applied had the same minimum qualifications and specialized experience requirements. Pl.'s Opp'n, Exh. A ¶ 6. In fact, Yancey notes that the two positions were identical, save for two differences: (1) the title of the position was changed to Field Training Officer; and (2) the position no longer required fifty-two weeks in the next lower position (GS-8), but instead opened the field to applications from GS-7 employees. In it undisputed that this was the first time that a GS-9 position at FPS was advertised as a Field Training Officer. Furthermore, Lt. Reginald Thomas, Yancey's supervisor, indicated in his affidavit to an EEO investigator that "the Lead Police/Corporal has the same duties as the FTO." Pl.'s Mot., Exh. 5.

The vacancy announcement for the FTO position stated that applicants were to submit a SF-171 application form, a supervisory evaluation, and, on "a separate sheet of paper," Quality Ranking Factors that described "the extent to which [the applicant] possess[es] the knowledge, skills, and abilities (KSA's) for each factor identified." *Id.* The application also stated, in capitalized letters, that "YOUR STATEMENTS SHOULD BE SUPPORTED BY EXPERIENCE AND/OR EDUCATION LISTED IN YOUR SF-171, OF-612, OR RESUME." *Id.*

3

Yancey timely applied for the GS-9 FTO position, submitting all the required paperwork on March 21, 2002. By letter dated April 25, 2002, GSA disqualified Yancey on the basis that he was "found to be ineligible" because he lacked "[s]pecialized experience related to the position." *Id.*, Exh. 1-E. Glenda West, Human Resource Specialist at GSA, made the initial determinations as to who was eligible for further consideration. West allegedly made her decisions based solely on her review of the information in the SF-171 form, ignoring the supervisory evaluation and the Quality Ranking Factors. West claims that she found Yancey ineligible because she did not see in the work experience portion of his SF-171 form any evidence that he had any specialized experience in instructing or teaching.

Of the twenty-five applications received for Vacancy Announcement #02991071, West found seven to be eligible. At the time Yancey applied for the FTO position, he was fifty-six years old; the oldest of the applicants. The seven applicants selected by West were all at least twelve years younger than Yancey (ranging from thirty-eight to forty-four years old) and none had ever worked as a GS-8 level employee or had served as Acting Corporal. Five applicants were fifty years of age or older; all were found ineligible for the vacant position. The seven applicants selected by West were ultimately approved and promoted to the vacant position.

Yancey filed the present suit against GSA on January 29, 2004 alleging that the failure to promote him was "motivated by prohibited age animus" in violation of the ADEA. He retired the following day, "out of frustration." Pl.'s Mot., Exh. 1 ¶ 2.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  F ED. R. C IV. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable [fact finder] to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

### B.  Yancey's ADEA Claim

The ADEA requires that the federal government make employment decisions "free from any discrimination based on age."  29 U.S.C. § 633a(a).  The D.C. Circuit has explained that, in an ADEA case, "the plaintiff's ultimate burden is to prove that age was a 'determining factor' in the challenged employment decision." *Krodel v. Young*, 748 F.2d 701, 706 (D.C. Cir. 1984) (quoting *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983)).

More specifically, "[t]he plaintiff must prove that 'age made a difference in the employer's decision,' in the sense that, 'but for' the discriminatory motive, the employee would have been hired, promoted, or retained." *Id.* (quoting *Cuddy v. Carmen*, 694 F.2d 853, 857–58 & n.23 (D.C. Cir. 1982)).

Absent direct evidence of discrimination, an employee must satisfy the familiar *McDonnell Douglas* burden-shifting framework when bringing a claim under the ADEA. *Id.* at 705; *Cuddy*, 694 F.2d at 856–57. Under this framework, a plaintiff must first make out a *prima facie* case by demonstrating sufficient facts to create a reasonable inference of age-based discrimination. The burden then shifts to the defendant to provide a legitimate nondiscriminatory reason for the adverse employment action. The burden on the defendant is merely one of production, not persuasion. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288–89 (D.C. Cir. 1998) (en banc). Once the defendant meets this burden, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's asserted legitimate reason is false, a lie, or that the employer's real motivation was discriminatory, such that a fact finder could infer discrimination. *Id.* at 1289–90; *Krodel*, 748 F.2d at 705. The plaintiff "at all times retains the burden of persuasion," *Coburn*, 711 F.2d at 342, and must show that age was a "determinative factor" in the defendant"'s decision. *Krodel*, 748 F.2d at 706.

    a. Prima Facie Case

In an ADEA case alleging discriminatory failure to hire, a plaintiff makes out a *prima facie* case by showing that: (1) she is a member of the ADEA's protected class of persons aged forty or older; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) the position was filled by

6

individuals who were substantially younger in age, or there was other evidence sufficient to give rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).

In the present case, Yancey clearly falls within the protected class, as he was fifty-seven years old at the time he was found ineligible for the GS-9 position. Furthermore, the individuals ultimately selected for the position were significantly younger than Yancey; the oldest of those selected was twelve years Yancey's junior. The only element of Yancey's *prima facie* case that is disputed is whether Yancey was qualified for the position. The GSA suggests that Yancey was not qualified for the FTO position because he failed to "indicate in his SF-171 that he had any experience involving training others." Def.'s Mot. at 9. Yancey argues that he was "clearly qualified" given his high performance ratings and his experience as a GS-8 Officer with GSA. Because the uncontroverted evidence demonstrates that Yancey was qualified for the FTO position at issue, the court concludes that Yancey has met his burden of establishing a *prima facie* case of discrimination.

The Qualification Requirements of the FTO position, as set forth on the first page of the vacancy announcement, read as follows:

> QUALIFICATION REQUIREMENTS
> Applicant must have one year of specialized experience equivalent to the GS-7 grade level which has equipped the applicant with the particular knowledge, skills, and abilities to perform the duties of the position. Experience is typically in or related to the work of the position. . . .
>
> Examples of qualifying specialized experience include: Experience that provided knowledge of a body of basic laws and regulations, law enforcement operations, practices, and techniques and involved responsibility for maintaining order and protecting life and property. **Creditable specialized**

> **experience may have been gained in work on a police force** . . . ; or in other work that provided the required knowledge and skills.
>
> TIME-IN-GRADE REQUIREMENT: Applicant must have served 52 weeks at the GS-07 (or higher) grade level."

Pl.'s Mot., Exh 3-C (emphasis added). Based upon these requirements, there can be no genuine dispute as to whether Yancey has established that he had the requisite qualifications for the FTO position; both the record of this case and Yancey's SF-171 application make clear that he did.

Yancey had thirty-four years of experience in police and security work at the time he applied for the vacant position, all of which was with the GSA. More than six of those years were spent as a GS-8 Officer, a position that required Yancey to, *inter alia*, "perform[] administrative assignments," such as being a "field training officer." Pl.'s Opp'n, Exh. A. Furthermore, during much of Yancey's tenure as a GS-8 Officer, Yancey acted as Lead Officer or Corporal and trained new police officers, the essential function of the FTO position. Given the fact that the vacancy announcement itself states that only one year of GS-7 experience is required, and that such experience can be garnered while working on a police force, it is hard to understand how GSA can argue that Yancey has failed to satisfy his *prima facie* burden. This assertion is even more implausible when one considers that Yancey applied for GS-9 positions at least four other times—positions that were in all important aspects identical to the position at issue—and was never previously found ineligible by GSA for lack of qualifications. *Id.* at 4.

Moreover, Yancey's qualifications were readily apparent in the application he submitted to GSA. First, the description of his work in his SF-171 states, *inter alia*, that he enforces "GSA rules and regulations" in order to protect the "life, liberty, property and the rights of individual

citizens on federal property under the charge and control of GSA." Pl.'s Mot., Exh. 1-D. Second, Yancey himself states in an attachment to his application that "as a senior patrol officer of 35 years with the Federal Protective Service, I was regularly assigned the duties and responsibilities of training newly assigned officers, which involved daily interaction with the officer in training, discussion of GSA policy and procedures." *Id.*  He continues on to provide specific details of the experience he had in development training presentations. Finally, Yancey's supervisor review overwhelmingly rates Yancey as superior in categories including "[k]nowledge of GSA polices, procedures and regulations related to training" and "[s]kills in course development presentations," and notes that Yancey has been "given the task of training non season officers [sic] as to the rules and regulations of GSA." *Id.*

Notably, GSA never explicitly states in its papers before this court that Yancey was not objectively qualified for the vacant position. Rather, GSA only asserts that any qualifications that Yancey might have had were not readily apparent on the face of his SF-171 application form, as opposed to the attachments to that form. This argument is not sufficient to preclude the establishment of a *prima facie* case of age-based discrimination, particularly when it is undisputed that West, the specific decision-maker here, was in possession of documentation that certainly establishes Yancey's qualifications. Her allegation that she failed to look at the attachments, even if true, does not undermine the fact that Yancey possessed the requisite experience. Therefore, the court is satisfied that the undisputed evidence establishes that Yancey was objectively qualified for the position and therefore has met his burden of establishing a *prima facie* case of age-based discrimination. *See Cones v. Shalala*, 199 F.3d 512, 518 (D.C.

Cir. 2000) ("For purposes of the *prima facie* case, . . . it is sufficient that [plaintiff] has established that he was substantively qualified and that [defendant] selected [someone outside his protected class.]").

      *b. Legitimate Nondiscriminatory Reason / Pretext*

GSA states that the reason that Yancey was disqualified for the vacant position was "because he failed to indicate in his SF-171 that he had any relevant teaching or training experience." Def.'s Opp'n at 11. Essentially, GSA argues that it ignored all attachments to the SF-171 form for all applicants when it made its eligibility determination, despite the fact that the vacancy announcement indicated that such attachments were required. While at first blush this explanation seems incredible, it has nothing to do with age and therefore satisfies defendant's burden of production under *McDonnell Douglas*. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("the determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment."). Furthermore, Yancey does not dispute that GSA has met its minimal burden of production.

Thus, because GSA met its burden of production, the burden shifts back to Yancey, "who then has an opportunity to discredit the employer's explanation." *McDonnell Douglas*, 411 U.S. at 804–05. He may do so by presenting evidence from which the finder of fact could infer discrimination, including "(1) [any evidence used to establish] the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff." *Aka*, 156 F.3d at 1289. GSA argues that Yancey has failed to meet this burden and, therefore, is

10

entitled to judgment as a matter of law. The court disagrees. When viewed in a light most favorable to Yancey, the summary judgment record is sufficient to make the issue of pretext a matter for consideration by the fact finder.[2]

First, there is a genuine dispute as to whether, contrary to GSA's statements, Yancey did indicate on the face of his application that he was qualified for the vacant position. As noted above, the vacancy announcement for the position listed as the only qualifying requirement that the applicant have one year of experience as a GS-7 employee. Such experience, according to the announcement, could be gained by working on a police force. Yancey asserts that the body of his SF-171 form plainly demonstrated that he met this requirement. Moreover, the information on the SF-171 form established Yancey as the only applicant who, at the time, held a position in the same occupational family at the GS-8 level. Further, the attachments to the SF-171, which Yancey argues "are an integral part of the 171 application," reiterate and expand upon Yancey's qualifications. Yancey further argues that the fact that Yancey was previously rated qualified for vacant GS-9 positions with identical duties and qualifications demonstrates that GSA "knew their reason [for disqualifying him] was false." Pl.'s Opp'n at 13. As such, according to Yancey, the agency's reason for its failure to promote must be untrue.

GSA responds by contending that the human resources employee responsible for making the initial qualification decision, Glenda West, did so based solely upon a review of the SF-171 form, ignoring all other attached materials. West assertedly determined that Yancey was ineligible because there was "nothing in the SF-171 that would have indicated to [her] that

---

[2] An employee, like Yancey, who brings an action under the ADEA against the federal government is not entitled to a trial by jury. *Lehman v Nakshian*, 453 U.S. 156, 165 (1981). Therefore, the court will serve as the finder of fact at any trial of Yancey's claims.

[Yancey] even acted as a mentor to new recruits," Def.'s Opp'n at 2.  GSA further argues that the content of the attachments to Yancey's application and Yancey's belief that GSA should have read those attachments are "beside the point." *Id.*  However, as Magistrate Judge Facciola noted in a similar case involving the same defendant, "the government's argument that the agency used a neutral process, one free of discrimination, to arrive at the results does not carry the day.  A [fact finder] may find the results of a process so illogical as to permit it to question its professed *bona fides*." *Allen v. Perry*, Civ. No. 99-2271, slip op. at *10 (D.D.C. Sept. 5, 2003).

      Yancey continues, presenting more evidence that GSA's rationale may well be a pretext for discrimination.  First, Yancey points to the settlement agreement, in which GSA agreed that Yancey would be deemed "highly qualified" for the next six GS-9 Corporal positions that became available.  It is undisputed that the decision-maker here, West, was well aware of this agreement.  Def.'s Mot., Exh. 5, at 2.  The fact that Yancey was not automatically deemed eligible by West for the position raises another genuine issue of fact as to whether the process used by GSA was legitimate.  To further support this conclusion, Yancey notes that GSA's reasons for claiming that the settlement agreement was inapplicable—because the vacancy announcement at issue was for a GS-9 FTO position, not a GS-9 Corporal position[3]—itself demonstrates that age was a determinative factor in the adverse employment action at issue.  Specifically, the GS-9 FTO position description was developed and advertised, after the

---

[3] Notably, Article XVIII of the CBA between Yancey's union and GSA states that an "employee who was not given proper consideration . . . in a previous competitive placement action must be given advance consideration for the next vacancy which becomes available *in the same occupational family* as the position denied.." Pl.'s Opp'n, Exh. D at 29 (emphasis added).  It is undisputed that the two positions at issue in this case are in the same occupational family.  Therefore, under the CBA at least, the difference in job title is immaterial

negotiation of the settlement agreement, with only two changes from the GS-9 Corporal position description: (1) a new title, and (2) looser eligibility requirements under which GS-7 employees could apply. Yancey argues, and a reasonable finder of fact could agree, that these changes were intentionally implemented so that Yancey would never benefit from the settlement agreement and so that younger applicants with less experience would be eligible for the position.

Yancey also notes that when GSA found him ineligible without reviewing the attachments to his application, it failed to follow both its own internal selection procedures as well as the requirements of the CBA entered into between Yancey's union and the agency. The GSA Merit Promotion Plan indicates that, when evaluating candidates for promotion, the GSA should give "[c]redit for performance appraisals, training, education, experience, awards, etc. . . . to the degree that it provides evidence that the applicant possesses the knowledge, skills, abilities and other characteristics required for the position to be filled." Pl.'s Opp'n at 13–14. Because the vacancy announcement indicated that applicants were required, "on a separate sheet of paper, [to] describe the extent to which [they] possess the knowledge, skill, or ability" necessary for the position and were required to attach a performance appraisal, Yancey argues that GSA's failure to consider these attachments is "totally inconsistent" with its own selection procedures. *Id.* at 14. Furthermore, Yancey also argues that the applicable CBA between the union and GSA required GSA to look beyond the face of the SF-171 when considering applications. *Id.* at 15–16.

Based on all of the above, the court concludes that Yancey has presented sufficient evidence from which a fact finder could conclude that age was a determinative factor in GSA's decision to find Yancey ineligible for the GS-9 Corporal position. For this reason, GSA's

motion for summary judgment must be denied.  Likewise, a finder of fact could choose to credit GSA's nondiscriminatory reasons and conclude that GSA was not motivated by age animus. Therefore, Yancey's motion for summary judgment must be denied as well.

### III.  CONCLUSION

For the aforementioned reasons, it is this 25th day of January, 2006, hereby

**ORDERED** that plaintiff's motion for summary judgment [#9] is **DENIED**; and it is further

**ORDERED** that defendant's motion for summary judgment [#10] is **DENIED**.

    Henry H. Kennedy, Jr.
    United States District Judge